AO 241 (Rev. 5/85)

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# United States District Court

| District | Massachusetts |
|---|---|

| Name | Michael S. Donovan | Prisoner No. W68164 | Case No. |
|---|---|---|---|

**Place of Confinement**

Souza - Baranowski Correctional Center
Harvard Rd. Box 8000
Shirley, Ma. 01464

| Name of Petitioner (include name under which convicted) | | Name of Respondent (authorized person having custody of petitioner) |
|---|---|---|
| Michael S. Donovan | V. | Commissioner of Correction Kathleen M. Dennehy & Supt. Lois A. Russo |

The Attorney General of the State of: Massachusetts, Thomas F. Reilly

04-11761 FDH

*Referred to MJ RB Collings*

PETITION

1. Name and location of court which entered the judgment of conviction under attack    Worcester County,

   Worcester Superior Court

2. Date of judgment of conviction    May 26, 2000

3. Length of sentence    Life(2nd Degree), 25-40yrs conc.9½-10 conc.,4½-5 conc.

4. Nature of offense involved (all counts)    Aggravated Rape(2cts)-Indecent A&B(3cts)-

   Kidnapping - Threat to Commit Crime

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐    No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒    No ☐

(2)

AO 241 (Rev. 5/85)

9.  If you did appeal, answer the following:

(a) Name of court    Supreme Judicial Court – Commonwealth of Massachusetts

(b) Result    Kidnapping conviction vacated...ALL other convictions Affirmed

(c) Date of result and citation, if known    July 30, 2003

(d) Grounds raised    (1) Prosecutor made improper comments on defendant's post-miranda denials and silence. (2)Inflamatory and prejudicial comments appealing to the jury's sympathies

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court    Supreme Judicial Court – Commonwealth of Massachusetts

(2) Result    DENIED

(3) Date of result and citation, if known    September 5, 2003

(4) Grounds raised    Same as in original appeal

(f)  If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☐        No ☒ X

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court

(2) Nature of proceeding

(3) Grounds raised

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self—incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.    Ground one:   **IMPROPER & PREJUDICIAL COMMENTS BY PROSECUTOR**

Supporting FACTS (state *briefly* without citing cases or law)   Prosecutor made undue comments on how defendant supposedly lied about knowledge of incident, when in actuality, defendant only denied knowledge in or of any alleged crime. Closing arguement made by prosecutor, was improper as it was based on conjecture rather than facts having prejudicial affect in the jury's decision making process.

B.    Ground two:   **IMPROPER COMMENTS & REFERENCE TO DEFENDANT'S SILENCE USED TO INSUATE GUILT TO JURY**

Supporting FACTS (state *briefly* without citing cases or law)   Prosecutor, in closing arguement, stated that if defendant was innocent, talking to police during questioning was the time to say so. (please refer to brief(1) pg.15

Prosecutor made numerous references to the defendant's silence, as well as his silence on consent

241 (Rev. 5/85)

C.    Ground three:    **UNCONSTITUTIONALLY IMPANELED JURY**

Supporting FACTS (state *briefly* without citing cases or law)    Jury member was witnessed talking to alleged victim's family member(mother), during a break in the trial. Jury member not forthcoming in regards to entire conversation. Defendant requested that jury member be excused...request denied by court. Request for mis-trial sought...request denied by court. Defense forced to use peremptory challenges on jurors who should have been excused for cause.

D.    Ground four:    **INEFFECTIVE COUNSEL**

Supporting FACTS (state *briefly* without citing cases or law)    My lack of testifying at trial was by direct request of trial attorney, not through defendant's own choice. Lack of requesting proper invest-igation into origins of blood found in vehicle, lack of having these samples tested as defendant requested. Lack of reasonable objections made during trial, and lack of requesting certain docuements be introduced as evidence.

If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

C&D- The question on jury was not properly preserved by trial attorney. The question of ineffective counsel was not pursued by appellate attorney as it's a **CONFLICT OF INTEREST**

Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☒X    No☐    **SENTENCE APPEAL**

Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a)    At preliminary hearing    Margaret Guzman-COMMITTEE FOR PUBLIC COUNSEL
WORCESTER SUPERIOR COURT

(b)    At arraignment and plea    SAME AS ABOVE

(6)

(c) At trial _____ Same _____

(d) At sentencing _____ Same _____

(e) On appeal _____ Eric Brandt    CPCS Appeals Unit

44 bromfield st., Boston,Ma. _____

(f) In any post—conviction proceeding _____

(g) On appeal from any adverse ruling in a post—conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?

Yes ☒     No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐     No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☒     No ☐     Will file further if applicable

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____ 8-5-04 _____
(date)

_____  Pro Se
Signature of Petitioner

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

WORCESTER COUNTY                              NO. 01-P-1760


COMMONWEALTH

V.

MICHAEL S. DONOVAN


BRIEF AND RECORD APPENDIX FOR THE DEFENDANT
ON APPEAL FROM THE WORCESTER DIVISION
OF THE SUPERIOR COURT DEPARTMENT


ERIC BRANDT

ATTORNEY FOR DEFENDANT

COMMITTEE FOR PUBLIC COUNSEL SERV.
Public Defenders Division
44 Bromfield Street
Boston, Massachusetts 02108
BBO #054130


January, 2002

-1-

## ISSUES PRESENTED

1.   Whether the judgments must be reversed
because the prosecutor, in closing argument, made
improper comments on the defendant's post-Miranda
denials that he committed any crime, as well as his
post-Miranda silence on the issue of consent, and also
made inflammatory appeals to the jury's sympathies and
fears.

2.   Whether the conviction of kidnapping must be
reversed, and the indictment dismissed, because that
conviction is duplicative of the convictions of aggra-
vated rape.

## STATEMENT OF THE CASE

On March 12, 1999, the defendant, Michael S.
Donovan, was charged in eight indictments with the
following offenses: aggravated rape (two acts), G.L.
c.265, §22(a); indecent assault and battery (three
acts), G.L. c.265, §13H; kidnapping, G.L. c.265, §26;
assault and battery by means of a dangerous weapon,
G.L. c.265, §15A(b); and threatening to commit a crime,
G.L. c.275, §4.  All but the latter indictment also
alleged that the defendant was a habitual offender,

-3-

the other aggravated rape charge (#99-156-3), the
defendant was sentenced to a term of twenty-five to
forty years (R. 3).  All terms are to be served
concurrently at Massachusetts Correctional Institution,
Cedar Junction (R. 3-4).[3/]

The defendant's notice of appeal was filed on June
23, 2000 (R. 20).  The appeal was subsequently entered
in this Court on December 11, 2001.

### STATEMENT OF FACTS

The case arises out of an incident which occurred
on the night of July 9, 1998, and involved a sexual
encounter between the complainant and the defendant.
At trial, the Commonwealth, alleging that the com-
plainant was kidnapped and raped, claimed that the
encounter occurred by force.  The defendant claimed
that the encounter was entirely consensual.  The
question of force or consent was the sole issue
disputed at trial.

### A.    The Commonwealth's Case

The Commonwealth's only percipient witness to the
incident was the complainant, who was sixteen years old

---

[3/]The remaining indictment charging threats to commit a
crime was placed on file (R. 3; Tr. VII/20).

-5-

The man then drove to a rural area of Sterling,
which was about a seven minute ride, and parked in a
field (Tr. II/65-67). There, a number of sexual acts
took place.[4] The complainant claimed that all of the
acts occurred without her consent (Tr. II/72-80). The
man then drove back to Leominster and dropped the
complainant off at the corner of Mechanic and Twelfth
Streets (Tr. II/81-82, 92-93). The complainant claimed
that at that time, the man removed the handcuffs using
a key on his key ring (Tr. II/90-92; III/34), and
threatened to kill her and her family if she called the
police (Tr. III/83, 92).

The complainant then returned to the Baxter house
and spoke to her friend Eddie (Tr. II/96-97), who
called the police (Tr. II/100, III/116). At around
12:15 a.m., she also spoke to a Leominster police
sergeant, Ray Bourque (Tr. II/100-101; III/59-62). The
prosecutor called Baxter and Bourque as fresh complaint
witnesses (Tr. III/65), and their testimony concerning

---

[4]The complainant testified that the man touched her
breasts, kissed her breasts (Tr. II/71-73), and put her
hand on his penis (Tr. II/78-79). These acts formed
the basis of the three charges of indecent assault and
battery (Tr. V/42, 85, 87). The complainant also
testified that the defendant made her perform fellatio
(Tr. II/74) and put his finger in her vagina (Tr.
II/77). These acts formed the basis of the two charges
of rape (Tr. V/42, 77, 79, 97).

agreed (Tr. III/212; IV/86-87) and, after receiving
Miranda warnings (R. 19), was interviewed there by
Sergeant Greene and a Leominster detective, Donna
LaPlume (Tr. III/217-218; IV/90-93). When told that
they were investigating a case of kidnapping and rape,
the defendant immediately replied, "It's not me" (Tr.
III/220-221; IV/94, 146). During the interview, he
also said, "I have no idea what you're talking about"
(Tr. IV/95), and "It's not me. I don't know what
you're talking about. This is crazy" (Tr. IV/97). In
response to questions, he said that he did not own a
knife like a hunting knife (Tr. IV/95), and that on the
night in question, he was playing pool at a bar called
the Tiki Hut until 12:30 or 1:00 a.m. (Tr. IV/96).

Following the interview, the defendant was placed
under arrest (Tr. III/224), and his house was searched
under a warrant (Tr. III/233). The search produced a
hunting knife (Tr. III/244-245) and a ring of keys that
included a handcuff key (Tr. IV/125), both of which the
complainant identified as used by the perpetrator (Tr.
II/90-91, 94). The search, however, did not produce
any handcuffs (Tr. IV/120).

At trial, the complainant identified the defendant
as the man involved in the incident (Tr. II/67), and
the Commonwealth presented substantial additional

the answer turned largely on the credibility of the
complainant's account ("her [own] words") (Tr. II/41;
V/10, 21), and that her account was "not true" (Tr.
II/43; V/10-11; see also post, at 14 n.12). In support
of this theory, defense counsel presented the following
evidence, mainly on cross-examination of witnesses
called by the Commonwealth.

## C.  The Defendant's Evidence

As to the reason why the complainant went out
at 11:00 that night, defense counsel elicited testi-
mony from Eddie Baxter that contradicted her
explanation. Baxter testified that before she left,
the complainant said that she was having problems
with her boyfriend -- specifically, that her boy-
friend was at the house of another girl named
Delphina, or so she believed (Tr. III/127-128).
Baxter testified that the complainant was "angr[y]"
about that situation, that she said that she intended
to "do something about [it]" (Tr. III/129), and that
from what she said, he thought that Delphina lived
in the area of Mechanic and Fifth Streets (Tr.
III/128). Also, following the incident, Baxter told
police that the complainant had gone out because "she

-11-

school nights and 11:00 p.m. on weekends) (R. 18; Tr.
II/126-128).[8]  The complainant testified that on the
night of the incident, a Thursday (Tr. IV/97), she knew
that it was 11:00 p.m. when she left the house (Tr.
II/133), but asserted that the curfew only applied
during the school year ("It doesn't state anything for
the summer") (Tr. II/129-130).[9]  Based on this testi-
mony, defense counsel suggested that the complainant's
violation of the CHINS agreement could have led her to
fear "repercussions" -- specifically, removal from the
Baxter home and return to her mother -- which would
have given her a motive to claim that the episode
occurred by force rather than with her consent (Tr.
II/44-45).

The defense also presented other evidence directed
at the complainant's claim that the incident occurred
by force.  As to the conceded fact that the police

---

[8]Defense counsel introduced a copy of the agreement
(Tr. III/6-9), which was dated June 11, 1998 (R. 18),
only a month before the incident.

[9]The agreement includes nothing altering the curfew
during the summer (R. 18).  The complainant and Eddie
claimed that the curfew was not being enforced by the
Baxters (Tr. II/131-132; III/106-107), but the com-
plainant acknowledged that the probation department had
not been informed of that alleged fact (Tr. II/132).
When asked whether she "just took it upon [her]self to
ignore the terms of the contract," the complainant
answered, "Yes" (Tr. II/132).

was found on the "front center [area] of her underwear"
and the inside "front abdomen area and crotch of [her]
jeans" (Tr. III/197).  Based on this testimony, defense
counsel argued that the sexual act could not have
occurred as the complainant claimed because, if it did,
the semen would have been found on her "back side" (Tr.
V/16, 22).  This argument was supported by Sergeant
Bourque's testimony, on cross-examination, that the
purpose of handcuffing a person behind the back is to
"prevent [the person] from bringing their arms to the
front" (Tr. II/94-95).

        Defense counsel also presented evidence showing a
number of discrepancies between the complainant's
testimony and her prior statements to the police.  The
conflicts in the accounts related to the following
points: whether the man said something to her as, or
before, he allegedly jumped out from behind the bushes
(Tr. III/29-30, 49-50, 70; IV/33, 47, 237); at what
stage the man allegedly put the knife away in the glove
compartment (Tr. II/61; III/18, 24-25; IV/141-142); at
what stage the man allegedly placed her in handcuffs
(Tr. II/61; III/22-23; IV/28-29, 238-239); whether,
after the sexual acts, she pulled up her own pants

-15-

## ARGUMENT

### I.

THE JUDGMENTS MUST BE REVERSED BECAUSE THE PROSECUTOR, IN CLOSING ARGUMENT, MADE IMPROPER COMMENTS ON THE DEFENDANT'S POST-MIRANDA DENIALS THAT HE COMMITTED ANY CRIME, AS WELL AS HIS POST-MIRANDA SILENCE ON THE ISSUE OF CONSENT, AND ALSO MADE INFLAMMATORY APPEALS TO THE JURY'S SYMPATHIES AND FEARS.

In her closing argument, the prosecutor made a number of improper comments on several different issues, which, taken together, constituted reversible error.   The comments addressed in the first two sections below related to the defendant's interview with the police, which was conducted after he had received the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966) (R. 19; Tr. III/217-218; IV/91-93).

### A.   The Comments on the Defendant's Denials

During her examinations of both Sergeant Greene and Detective LaPlume, the prosecutor elicited testimony that when the defendant was informed that they were investigating a kidnapping and rape, he immediately replied, "It's not me" (Tr. III/220-221; IV/94, 146).   The prosecutor also elicited testimony that during the course of the interview, the defendant said, "I have no idea what you're talking about" (Tr. IV/95), and "It's not me.   I don't know what you're talking about.   This is crazy" (Tr. IV/97).

-17-

As an initial matter, the evidence of the defendant's denials was not properly admissible. Under "impressive and long-standing precedent," Commonwealth v. Ruffen, 399 Mass. 811, 812 (1987), it is the "rule that if a defendant is charged with a crime and unequivocally denies it, that denial is not admissible in evidence." Commonwealth v. Nawn, 394 Mass. 1, 4 (1985), cited in Commonwealth v. Waite, 422 Mass. 792, 801 (1996). Liacos, Handbook of Massachusetts Evidence §9.7.8, at 638 (7th ed. 1999). Under our common law, this is so because a defendant's denial of guilt, offered, as in this case, to show consciousness of guilt, can only serve that purpose by reasoning that is circular. Commonwealth v. Trefethen, 157 Mass. 180 (1892).[13] Under the Miranda regime, such a denial is inadmissible because "[d]efendants are, of course, under absolutely no obligation to disprove government accusations," Commonwealth v. Waite, supra, at 801, and the rule is one of "constitutional dimension." Id.,

---

[13] "The logical effect of an unequivocal denial of guilt, if it have any effect, is in favor of the defendant .... [I]t is not competent for the government to contend that a denial of guilt is of itself evidence against the defendant. To argue that, by the other evidence, the defendant is shown to be probably guilty, and that therefore his denial of guilt is false, and is additional evidence against him, ought not to be permitted." Id. at 199.

-19-

testify at trial." Id.[14/]   The same is therefore true
of the prosecutor's comments in this case, which are
functionally indistinguishable.  Here, as in Waite,
those comments made "[i]mproper use of [the] defen-
dant's denials of knowledge of the crime or of guilt."
Id. at 801-802.  See Doyle v. Ohio, supra, at 614-615
n.5, 634-635 n.12 (involving similar comments in
closing argument: "[I]f you are innocent ... you don't
say [to the police] -- 'I don't know what you are
talking about.'  You tell the truth").

     In addition, the Waite Court noted that it was
"troubled by the prosecutor's bald assertion to the
jury that the defendant was 'a liar'", which it held to
be "clear error."  Id. at 801.  In the present case,
the prosecutor made essentially the same assertion as
to both the defendant's initial denial of culpability
("It's a lie") and his subsequent denial of knowledge
of the crime ("[T]hat's a lie") (Tr. V/37).  Thus, here,
as in Waite, those comments also constituted error.

     The errors were preserved below by defense coun-
sel's specific objection to the prosecutor's comments

---

[14/]The defendant in Waite, like the defendant in this
case, did not testify at trial.  Id. at 797 n.4.  Also,
while the defendant in this case made no objection to
the admission of the denial evidence, the same was true
in Waite, see id. at 795-796 n.3, where the Court found
error in both the admission of the evidence and the
prosecutor's comments in closing.  Id. at 801.

-21-

[was] the time to say so" (Tr. V/37). Although defense
counsel did not object to this argument, it was
nonetheless improper.

It is black letter law that a prosecutor may not
comment on a defendant's silence after he has received
Miranda warnings. Doyle v. Ohio, supra, 426 U.S. at
617-619 (holding that such comment violates due process
under Fourteenth Amendment). See Commonwealth v.
Peixoto, 430 Mass. 654, 658-660 (2000) (same under
Article Twelve of Declaration of Rights). This is so,
among other reasons, because the warnings expressly
inform a defendant that he has a right to remain
silent, and adverse comment on such silence would
unfairly "penalize" him for exercising that right.
Commonwealth v. Waite, supra, 422 Mass. at 797. See
Commonwealth v. Cobb, 374 Mass. 514, 520-521 (1978),
quoting from Doyle v. Ohio, supra, at 617-618. As a
result, a prosecutor ordinarily may not seek to argue
an inference of guilt, or consciousness of guilt, based
on what a defendant did not say after receiving Miranda
warnings.

Applying this principle, the Supreme Judicial
Court found reversible error in a prosecutor's argument
stressing that "at no time did [the defendant] ever say

-23-

defense conceded at trial, see <u>id</u>. at 794-795 & n.1].
No, [he said] I don't know what you're talking
about."[15/]

The defendant recognizes that there are cases
holding that, "[w]here the defendant chooses not to
remain silent but speaks to police," the prosecutor may
comment on "any omission from his statement that is at
variance with his trial testimony."  Liacos, <u>supra</u>,
§9.7.8, at 643, and cases cited.  In this case, how-
ever, the defendant did not testify at trial, so the
prosecutor's comment on the cited omission was not
permissible for the purpose of impeachment.

Where a defendant does not testify, such comment
may be permissible for the purpose of showing consci-
ousness of guilt if his prior statement to the police
was inconsistent with the defendant's theory at trial.
See <u>Commonwealth</u> v. <u>Thompson</u>, 431 Mass. 108, 117-118 &
n.7, cert. denied, 531 U.S. 864 (2000); <u>Commonwealth</u> v.
<u>Hunt</u>, 50 Mass. App. Ct. 565, 567-568 (2001).  But here,
the defendant's trial theory that the incident was
consensual was not necessarily inconsistent with his

---

[15/]In <u>Waite</u>, however, this comment on the defendant's
silence was not analyzed separately from the comments
on the defendant's post-Miranda denials, which the
Court found to be improper.  <u>Id</u>. at 801.

> further. Sure, there are no cuts other than
> the abrasions on her wrists. There's no cut
> clothing. There's no bruises. <u>But she's</u>
> <u>alive</u>, and she's alive because she had the
> common sense and wherewithal and self-
> preservation to go along with him and be calm
> and not say that she was going to call the
> police and not get him angry with her. <u>She</u>
> <u>saved her own life that night</u>.

(Tr. V/35-36) (emphasis added)

At the conclusion of the prosecutor's closing, defense
counsel objected to this argument as follows: "She's
alive because she didn't fight. I think that's inflam-
matory. I would object to that" (Tr. V/43). The
objection was well founded.[16]

This case presented no reason for the prosecutor
to conjure the prospect of the complainant's death,
which was entirely gratuitous. By stressing that she
could have been killed, the prosecutor unfairly
appealed to sympathy for the complainant, which easily
could have "obscure[d] the clarity with which the jury
[must] look at the evidence." Commonwealth v.
Santiago, 425 Mass. 491, 501 (1997). In another case
where the defendant was tried for kidnapping and rape,
and where the disputed issue was consent, this Court

---

[16]/Defense counsel had previously objected to a similar
comment interposed by the prosecutor during her exami-
nation of the complainant: "And after you did make it
out [of the incident] alive --". At that time, the
judge had sustained the objection (Tr. III/54).

-27-

not free to stress that the streets are no longer safe
to walk due to the problem of violent crime (impliedly,
like the crime committed in this case). That argument
was not only unfounded by the evidence, but based on
"general considerations", Commonwealth v. MacDonald
(No. 1), 368 Mass. 395, 402 (1975), that were irrele-
vant to this case and inimical to its proper decision.
See Commonwealth v. Wallace, 45 Mass. App. Ct. 930, 931
(1998) (finding error in prosecutor's argument con-
cerning "the right of the people in the neighborhood to
feel safe"), cited in Commonwealth v. Roberts, 433
Mass. 45, 54 (2000). In addition, given the prose-
cutor's graphic rhetoric - conjuring the image of
people staying home behind locked doors and looking out
through peepholes - the argument easily could have been
heard as an appeal to the jurors, "as members of the
community, to protect innocent victims [and themselves]
from violent crime." Commonwealth v. Awad, supra, 47
Mass. App. Ct. at 146. The argument was improper.

### D.   The Prejudice in the Arguments

The sole issue for decision in this case was
whether the encounter between the complainant and the
defendant took place by force or consent (see ante, at
8).

(see <u>ante</u>, at 12).[17]/ The Commonwealth's evidence of
nonconsent therefore cannot be viewed as overwhelming.

In these circumstances, the prosecutor's improper
comments in closing argument could have made a differ-
ence in the jury's decision. The comments on the
defendant's denials in his statement to the police, and
the comment on his silence as to the issue of consent,
all went to show consciousness of guilt and, as such,
were highly prejudicial. See <u>Commonwealth</u> v. <u>Cobb</u>,
<u>supra</u>, 374 Mass. at 521 ("We cannot overestimate the
effect on the jury of erroneously admitted testimony
and argument tending to show consciousness of guilt on
the part of the defendant"). The cases stress that
"[t]he nature of <u>Doyle</u> error is so egregious that
reversal is the norm, not the exception." <u>Commonwealth</u>
v. <u>Mahdi</u>, 388 Mass. 679, 698 (1983). And here, despite
defense counsel's objection to the comments on the
denials (Tr. V/43), the judge gave no curative instruc-
tions. The jury were thus left with "the plausible but

---

[17]/Nor was it dispositive that a key alleged to be a
handcuff key was found on the defendant's key ring (Tr.
IV/125). There are many thousands of handcuff keys
extant in the world and the defendant's possession of
one of them, while good evidence for the Commonwealth,
could not show conclusively that the incident was
nonconsensual. This is particularly so since the
defendant was not found to possess any handcuffs (Tr.
IV/120).

Commonwealth v. McLeod, supra, 30 Mass. App. Ct. at
539, quoting from Commonwealth v. Shelley, 374 Mass.
466, 470 (1978).[19/]

The likelihood of prejudice is not negated merely
by the fact that the jury acquitted the defendant of
one of the lesser charges, while convicting him of all
seven other charges (R. 3). Although some cases have
viewed split verdicts as showing that improper argu-
ments did not influence the jury, see Commonwealth v.
McLaughlin, 431 Mass. 506, 512 (2000), and cases cited,
that view is not always appropriate. See Commonwealth
v. Lindsey, 48 Mass. App. Ct. 641, 646 (2000) (con-
cluding that jury may have been influenced, even though
they "did retain enough composure to discriminate among
the [three] charges and acquit on two of them").
Indeed, in some cases, split verdicts have been viewed
as showing simply that the jury did not regard the
Commonwealth's evidence as overwhelming. Commonwealth
v. Kozec, 21 Mass. App. Ct. 355, 365 n.8 (1985), S.C.,
399 Mass. 514 (1987). See Commonwealth v. Freeman, 29
Mass. App. Ct. 635, 643 (1990). In the defendant's
view, that was the situation in this case.

---

[19/]Again, one of these arguments was properly preserved
by objection (Tr. V/43), and the other, while unpre-
served, must be considered in evaluating the question
of prejudice (see ante, at 30 n.18).

of both offenses itself constitutes multiple punishment in violation of the Fifth and Fourteenth Amendments of the United States Constitution and the corresponding Massachusetts law.   Rutledge v. United States, 517 U.S. 292, 301-303 (1996).   Commonwealth v. Jones, 382 Mass. 387, 395-396 (1981).

Therefore, the conviction of kidnapping must be vacated and the indictment charging that offense dismissed.

CONCLUSION

For the reasons stated in Argument I, the judgments must be reversed.

For the reasons stated in Argument II, the conviction of kidnapping must be vacated and the indictment charging that offense dismissed.

Respectfully submitted,

ERIC BRANDT

ATTORNEY FOR DEFENDANT

COMMITTEE FOR PUBLIC COUNSEL SERVICES
Public Defender Division
44 Bromfield Street
Boston, Massachusetts 02108
(617) 482-6212
BBO #054130

January, 2002.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER COUNTY                          SUPREME JUDICIAL COURT
                                         NO.

                                         APPEALS COURT
                                         NO. 01-P-1760

COMMONWEALTH

V.

MICHAEL S. DONOVAN

DEFENDANT'S APPLICATION FOR
FURTHER APPELLATE REVIEW

Now comes the defendant, pursuant to Mass. R.A.P.
27.1, and requests that he be granted leave to obtain
further appellate review of his convictions on Worcester
County indictments no. 99-156(2)-(6).

The grounds for this application are stated in the
accompanying memorandum.

MICHAEL S. DONOVAN

By his attorney,

Eric Brandt
COMMITTEE FOR PUBLIC COUNSEL SERVICES
Public Defender Division
44 Bromfield Street
Boston, Massachusetts 02108
(617) 482-6212
BBO #054130

Dated:  August 7, 2003.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER COUNTY                      SUPREME JUDICIAL COURT
                                     NO.

                                     APPEALS COURT
                                     NO. 01-P-1760

COMMONWEALTH

V.

MICHAEL S. DONOVAN

MEMORANDUM IN SUPPORT OF DEFENDANT'S
APPLICATION FOR FURTHER APPELLATE REVIEW

STATEMENT OF THE CASE

On March 12, 1999, the defendant, Michael S.
Donovan, was charged in eight indictments with the
following offenses: aggravated rape (two acts), G.L.
c.265, §22(a); indecent assault and battery (three
acts), G.L. c.265, §13H; kidnapping, G.L. c.265, §26;
assault and battery by means of a dangerous weapon,
G.L. c.265, §15A(b); and threatening to commit a crime,
G.L. c.275, §4. All but the latter indictment also
alleged that the defendant was a habitual offender,
G.L. c.279, §25 (R. 6-17; Tr. I/140-142).[1]  The
defendant pleaded not guilty (R. 2).

_____

[1]The record appendix is cited as "(R.   )." The tran-
script of the trial is cited by volume and page as
"(Tr.   /   )." The Appeals Court's decision is cited as
"(Slip op.   )."

concurrently at Massachusetts Correctional Institution, Cedar Junction (R. 3-4).[3/] The defendant's notice of appeal was filed on June 23, 2000 (R. 20).

The case was subsequently briefed in the Appeals Court and oral argument was heard on January 13, 2003. On July 30, 2003, the Court vacated the kidnapping conviction as duplicative and affirmed the remaining convictions.

The defendant has not filed a petition for rehearing in the Appeals Court.

## STATEMENT OF FACTS

This case arises out of an incident which occurred on the night of July 9, 1998, and involved a sexual encounter between the complainant and the defendant.

At trial, defense counsel made clear that it was "not contested" that the complainant and the defendant were together that night (Tr. V/13) or that they engaged in sex (Tr. V/15). "She left her house. She met Michael Donovan. There was a sex act. He brought her home" (Tr. II/48).

Defense counsel stated that the issue was "whether or not [the complainant] consented or did not

---

[3/]The remaining indictment charging threats to commit a crime was placed on file (R. 3; Tr. VII/20).

the complainant said that she was having problems with her boyfriend -- specifically, that her boyfriend was at the house of another girl named Delphina, or so she believed (Tr. III/127-128). Baxter testified that the complainant was "angr[y]" about that situation, that she said that she intended to "do something about [it]" (Tr. III/129), and that from what she said, he thought that Delphina lived in the area of Mechanic and Fifth Streets (Tr. III/128). Also, following the incident, Baxter told police that the complainant had gone out because "she had words with a male friend" (Tr. III/126).[5/]

2.   Defense counsel also elicited testimony as to the reason why the complainant was living in the Baxter house at the time of the incident. On cross-examination, the complainant acknowledged that for several years, she had had problems in her relation-

_____

[5/]In her testimony, the complainant acknowledged that she had a boyfriend, that they sometimes had fights (Tr. III/46, 125), and that she spoke to Delphina on the phone that night before she left the house (Tr. III/40). The complainant also acknowledged that she spoke to her boyfriend that night: when asked if they had a fight before she left the house, she answered, "Not a fight" (Tr. III/37). The complainant denied that she left the house because of any fight (Tr. III/26-27, 46) or that she was going to confront her boyfriend (Tr. III/40). In closing argument, however, the prosecutor seemed to concede that this testimony raised a question of "credibility," saying that "it is certainly fair game for you to consider why she left" the house that night (Tr. V/28-29).

complainant's violation of the CHINS agreement could have led her to fear "repercussions" -- specifically, removal from the Baxter home and return to her mother -- which would have given her a motive to claim that the episode occurred by force rather than with her consent (Tr. II/44-45).

3.    The defense also presented other evidence directed at the complainant's claim that the incident occurred by force. As to the claimed marks on the complainant's wrists (Tr. III/62, 115; IV/74, 199), Sergeant Greene conceded that no marks appeared in three photos of the complainant's wrists that were taken that night (Tr. IV/76-77; Exhs. 69-71), and the prosecutor also acknowledged that "there are no marks depicted" in the photos (Tr. IV/157; V/32). Sergeant Greene further acknowledged that the police took "hundreds of photos" following the incident, and that the other photos, including some close-ups, showed their subjects in significant detail (Tr. IV/149-151, 156-158).

4.    As to the claimed abduction, the complainant agreed that Mechanic Street is a main road, and fairly well-lit, with sidewalks located right next to the street (Tr. III/35-36; IV/30-32). She also testified that a car drove by while she was being dragged at

6. Defense counsel also presented evidence
showing a number of discrepancies between the com-
plainant's testimony and her prior statements to the
police. The conflicts in the accounts related to the
following points: whether the man said something to
her as, or before, he allegedly jumped out from behind
the bushes (Tr. III/29-30, 49-50, 70; IV/33, 47, 237);
at what stage the man allegedly put the knife away in
the glove compartment (Tr. II/61; III/18, 24-25;
IV/141-142); at what stage the man allegedly placed
her in handcuffs (Tr. II/61; III/22-23; IV/28-29, 238-
239); whether, after the sexual acts, she pulled up
her own pants (i.e., while allegedly handcuffed behind
her back);[8] and whether, upon returning to the house,
she talked to Eddie Baxter for ten or fifteen minutes
before he called the police (Tr. III/9, 77, 134,
139).[9] Based in part on these conflicts in the
complainant's accounts, defense counsel argued in
closing that her claims were not credible and should

---

[8]Sergeant Bourque testified that the complainant told
him that "she pulled up her pants", as he also wrote in
his report (Tr. III/75-77). The complainant denied
making that statement (Tr. III/34), and claimed that
the defendant pulled up her pants (Tr. II/80).

[9]In addition, Baxter testified that he did not recall
the complainant's clothes being torn, or her appearance
being "disheveled," when she returned to the house
after the incident (Tr. III/136-137).

In her closing argument, the prosecutor argued

this evidence as follows:

> He went to the police department. You
> heard from Sergeant Greene that Mr. Donovan
> at that time had the opportunity to tell
> them whatever he wanted to. They gave him
> plenty of time. If this were consensual,
> ladies and gentlemen, this is the time to
> say so.... If you are looking for the
> truth, you are not going to find it in what
> he told the police.
>
> What did he tell them? Donna LaPlume
> and Sergeant Greene advised him that they
> were investigating a rape and a kidnapping
> in Sterling and Leominster respectively, and
> he immediately said to them, "It's not me."
> That's an untruth. It's a lie.
>
> He was asked if he knew anything about
> the incident. He said no. Well, we now
> know that's a lie because in his house, in a
> room with his personal papers in it, the
> police found [a newspaper article entitled]
> "Kidnapping Investigation Turns Up No
> Leads," with a composite and with a little
> mustache drawn on it.... So he lied to them
> about that.

(Tr. V/36-38) (emphasis added)

At the conclusion of the prosecutor's argument,

defense counsel objected to these comments as follows:

> [C]ommenting on the defendant's statement,
> calling it false, a lie, because he said he
> did not commit a rape and kidnapping, that's
> up to the jury to make that determination.

(Tr. V/43)

The judge replied, "I think it was fair argument" (Tr.
V/43), and took no corrective action.

### ARGUMENT

THE JUDGMENTS MUST BE REVERSED BECAUSE THE PROSECUTOR, IN CLOSING ARGUMENT, MADE IMPROPER COMMENTS ON THE DEFENDANT'S POST-MIRANDA DENIALS THAT HE COMMITTED ANY CRIME, AS WELL AS HIS POST-MIRANDA SILENCE ON THE ISSUE OF CONSENT.

A.   The Comments on the Defendant's Denials

As an initial matter, the evidence of the defendant's denials elicited by the prosecutor was not properly admissible. Under "impressive and long-standing precedent," Commonwealth v. Ruffen, 399 Mass. 811, 812 (1987), it is the "rule that if a defendant is charged with a crime and unequivocally denies it, that denial is not admissible in evidence." Commonwealth v. Nawn, 394 Mass. 1, 4 (1985), cited in Commonwealth v. Waite, 422 Mass. 792, 801 (1996). Liacos, Handbook of Massachusetts Evidence §9.7.8, at 638 (7th ed. 1999). Under our common law, this is so because a defendant's denial of guilt, offered, as in this case, to show consciousness of guilt, can only serve that purpose by reasoning that is circular. Commonwealth v. Trefethen, 157 Mass. 180 (1892).[11]  Under the Miranda

---

[11] "The logical effect of an unequivocal denial of guilt, if it have any effect, is in favor of the defendant .... [I]t is not competent for the government to contend that a denial of guilt is of itself evidence against the defendant. To argue that, by the other evidence, the defendant is shown to be probably guilty, and that therefore his denial of guilt is false, and is additional evidence against him, ought not to be permitted." Id. at 199.

restated as follows: "a defendant's postcharge denials cannot be used at all, except as prior inconsistent statements should the defendant testify at trial."  Id.[12/]  The same is therefore true of the prosecutor's comments in this case, which are functionally indistinguishable.  Here, as in Waite, those comments made "[i]mproper use of [the] defendant's denials of knowledge of the crime or of guilt."  Id. at 801-802.  See Doyle v. Ohio, supra, at 614-615 n.5, 634-635 n.12 (involving similar comments in closing argument: "[I]f you are innocent ... you don't say [to the police] -- 'I don't know what you are talking about.'  You tell the truth").

In addition, the Waite Court noted that it was "troubled by the prosecutor's bald assertion to the jury that the defendant was 'a liar'", which it held to be "clear error."  Id. at 801.  In the present case, the prosecutor made essentially the same assertion as to both the defendant's initial denial of culpability ("It's a lie") and his subsequent denial of knowledge of the crime ("[T]hat's a lie") (Tr. V/37).  Thus,

_____

[12/]The defendant in Waite, like the defendant in this case, did not testify at trial.  Id. at 797 n.4.  Also, while the defendant in this case made no objection to the admission of the denial evidence, the same was true in Waite, see id. at 795-796 n.3, where the Court found error in both the admission of the evidence and the prosecutor's comments in closing.  Id. at 801.

under Fourteenth Amendment). See Commonwealth v.
Peixoto, 430 Mass. 654, 658-660 (2000) (same under
Article Twelve of Declaration of Rights). This is so,
among other reasons, because the warnings expressly
inform a defendant that he has a right to remain
silent, and adverse comment on such silence would
unfairly "penalize" him for exercising that right.
Commonwealth v. Waite, supra, 422 Mass. at 797. See
Commonwealth v. Cobb, 374 Mass. 514, 520-521 (1978),
quoting from Doyle v. Ohio, supra, at 617-618. As a
result, a prosecutor ordinarily may not seek to argue
an inference of guilt, or consciousness of guilt, based
on what a defendant did not say after receiving Miranda
warnings.

Applying that principle, this Court found rever-
sible error in a prosecutor's argument stressing that
"at no time did [the defendant] ever say [to police],
'I didn't do it,'" which was the defense presented at
trial. Commonwealth v. Haas, 373 Mass. 545, 559
(1977). There, the comment was held improper even
though the defendant "did not remain [completely]
silent but instead chose to speak with police," id., in
an interview at the station. See id. at 548. This was
because, during the interview, "at no time was [the
defendant] asked directly whether he committed the

variance with his trial testimony." Liacos, supra,
§9.7.8, at 643, and cases cited. In this case, how-
ever, the defendant did not testify at trial, so the
prosecutor's comment on the cited omission was not
permissible for the purpose of impeachment.

Where a defendant does not testify, such comment
may be permissible for the purpose of showing consci-
ousness of guilt if his prior statement to the police
was inconsistent with the defendant's theory at trial.
See Commonwealth v. Thompson, 431 Mass. 108, 117-118 &
n.7, cert. denied, 531 U.S. 864 (2000); Commonwealth v.
Hunt, 50 Mass. App. Ct. 565, 567-568 (2001). But here,
the defendant's trial theory that the incident was
consensual was not necessarily inconsistent with his
prior statement, since the denials in that statement
may not have been denials of involvement but denials of
culpability, as defense counsel suggested in the objec-
tion made below ("[H]e said he did not commit a rape
and kidnapping") (Tr. V/43). As such, the defendant's
denials of culpability were not inconsistent with his
trial theory that the incident was consensual, and the
defendant's silence on the particular issue of consent
was not properly subject to comment as showing con-
sciousness of guilt. See 3 LaFave, Israel & King,
Criminal Procedure §9.6(a), at 402-403 n.35 (2d ed.

The Commonwealth's evidence of nonconsent provided
no dispositive answer.  The Commonwealth's best evi-
dence on that issue was that several witnesses saw
marks like those made by handcuffs present on the
complainant's wrists.  That evidence, however, was
undercut by the fact, conceded by the Commonwealth,
that no marks appeared in the photos taken of the
complainant's wrists, even though hundreds of other
photos taken by police that night showed their subjects
in significant detail (see ante, at 7).[15/]  The
Commonwealth's evidence of nonconsent therefore cannot
be viewed as overwhelming.

In these circumstances, the prosecutor's improper
comments in closing argument could have made a differ-
ence in the jury's decision.  The comments on the
defendant's denials in his statement to the police, and
the comment on his silence as to the issue of consent,
all went to show consciousness of guilt and, as such,
were highly prejudicial.  See Commonwealth v. Cobb,
supra, 374 Mass. at 521 ("We cannot overestimate the

[15/]Nor was it dispositive that a key alleged to be a
handcuff key was found on the defendant's key ring (Tr.
IV/125).  There are many thousands of handcuff keys
extant in the world and the defendant's possession of
one of them, while good evidence for the Commonwealth,
could not show conclusively that the incident was
nonconsensual.  This is particularly so since the
defendant was not found to possess any handcuffs (Tr.
IV/120).

## CONCLUSION

For the reasons stated herein, the prosecutor's improper comments in closing argument constituted prejudicial error and violated the defendant's right of due process under the Fourteenth Amendment to the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights.  The defendant's application for further appellate review therefore should be granted.

In addition, the defendant continues to press his arguments concerning two other improper comments made by the prosecutor in closing (see D.B., Argument I.C), which have not been addressed herein due to limitations of space.  If further appellate review is granted, the defendant requests that the Court consider those arguments as well.

Respectfully submitted,

Michael S. Donovan

By his attorney,

Eric Brandt
COMMITTEE FOR PUBLIC COUNSEL SERVICES
Public Defender Division
44 Bromfield Street
Boston, Massachusetts 02108
(617) 482-6212
BBO #054130

Dated:   August 7, 2003.